(A.R.D. 109)

British Cars & Parts, Inc.
Robert E. Landweer & Co., Inc. } *v.* United States

Entry No. 249.

Third Division, Appellate Term

(Decided June 23, 1959)

Lawrence & Tuttle (Hadley S. King of counsel) for the appellants.
George Cochran Doub, Assistant Attorney General (Daniel I. Auster, trial attorney), for the appellee.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., dissenting

RICHARDSON, Judge: This is an application for review of a decision and judgment rendered upon an appeal for reappraisement of an importation of merchandise invoiced as "4 M.G. Midget 'TD' Rdstrs— new automobiles—complete with five tires & tubes." The merchandise was imported from Canada and entered at Seattle, Wash.

The facts of record are contained in the following oral stipulation, upon which the case was submitted for decision:

1. The involved automobiles were manufactured in England and sold to a Canadian firm, and were shipped from England to that firm, who thereupon placed them in storage intending to sell the cars in the Canadian market. Later this intention was changed, and thereupon the Canadian firm sold the cars to the American importer, and shipped them to the United States.

2. That at no time have "such or similar" automobiles been "freely offered for sale to all purchasers" within the meaning of those words as used in Sections 402(c) and 402(d), Tariff Act of 1930, either in England or in Canada, for home consumption or for exportation to the United States, nor have "such or similar" automobiles been "freely offered to all purchasers" within the meaning of Section 402(e) of said Act; also "such or similar" automobiles within the meaning of those words as found in Section 402(f) of said Act were not being manufactured in Canada.

3. That the imported automobiles were appraised at Canadian dollars 1,282.27, each, as representing the "cost of production" in Canada ascertained by reference to the fact that the cars had been imported into Canada from England, and were placed in storage with intent to sell them in the Canadian market, and were later sold by the Canadian importer to the American importer, and exported to the United States; or

4. That the "cost of production" of said automobiles in England as ascertained by reference to manufacture in England and subsequent sale thereof, as referred to in Section 402(f) was English pounds 356 each.

5. That the sole dispute between the parties is whether the automobiles should be valued at Canadian dollars 1,282.27 each or English pounds 356 each. Neither party denies the accuracy of these respective amounts.

The stipulated facts reveal that the value returned by the appraiser was based on the cost of production of the instant merchandise in Canada, namely, $1,282.27. The appellants contend that the appraiser

should have found as the correct value under 19 U.S.C., section 1402(f) (§ 402(f), Tariff Act of 1930), the actual cost of production in England, which has been stipulated equal to English pounds 356 each.

Thus, the basic question raised by this appeal is whether the constructive cost of production of the instant merchandise in Canada, the country of exportation, or the actual cost of production in England, the country of manufacture, should be applied in determining the dutiable value thereof.

The trial judge, after a careful and thorough consideration and analysis of the stipulated facts, the statute involved, and the arguments of the parties, concluded as a matter of law:

1. That Canada was the country of exportation.

2. That there is no statutory foreign or export value for such or similar merchandise in the country of exportation.

3. That there is no statutory United States value for such or similar merchandise.

4. That proof of cost of production in England, the country of origin of the subject merchandise, does not establish cost of production within the statutory formula prescribed in section 402(f) of the Tariff Act of 1930, which relates to cost of production in the country of exportation.

5. That there is no evidence to overcome the presumptively correct value returned by the appraiser.

Appellants do not claim that the trial judge erred in concluding that the automobiles in question were exported from Canada, and they concede that there is no statutory foreign, export, or United States value for such or similar merchandise, and that cost of production is the proper basis for determination of value. But appellants challenge the propriety of the conclusion "that proof of cost of production in England, the country of origin of the subject merchandise, does not establish cost of production within the statutory formula prescribed in section 402(f) of the Tariff Act of 1930, which relates to cost of production in the country of exportation."

The statutory formula for the determination of cost of production is spelled out in section 1402(f) as follows:

#### Cost of production

(f) For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Appellants argue that the whole pattern of this provision of the tariff act requires a determination of the cost of production in the country of manufacture. The argument is made that the fourth element of the statutory cost of production, i.e., profit, is expressly required to be ascertained with reference to the country of manufacture or production, and that since it is tied into subdivisions (1) and (2) by the limitation that the profit added must not be less than 8 per centum of the amounts found under those subdivisions, the elements specified therein (cost of labor, material, and the usual general expenses) must also be determined in relation to the country of manufacture or production. Appellants contend that a dutiable value based on cost of production of the merchandise in Canada would, of necessity, be hypothetical and fictitious, since such or similar merchandise is not produced in that country, and that it is manifest from the decision of the Court of Customs and Patent Appeals in the case of *H. J. Heinz Company* v. *United States*, 43 C.C.P.A. (Customs) 128, C.A.D. 619, that a hypothetical constructed cost of production for any country other than the actual country of manufacture would not be acceptable compliance with the statute.

The appellee contends that cost of production is a constructive foreign value, and, like foreign and export values under provisions (c) and (d) of section 1402, must be determined in the country of exportation. Appellee maintains that since Canada, on the basis of the facts and the applicable law, was the country of exportation, the appraiser properly constructed the cost of production in that country, notwithstanding the fact that such or similar merchandise was not produced therein and the cost so found would have to be a constructive one.

The trial judge analyzed the definitions of value set forth in section 1402 and pointed out that foreign and export values are, by the terms of the statute, made to relate to the country of exportation; that, in spelling out the elements which comprise cost of production, Congress has been less specific, but he construed section 1402(f) to be applicable to the country of exportation.

In section 1402(f), cost of production is *the sum of four items.* Item one consists of the cost of materials and manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration. This item would apply to the country of manufacture or production, if the imported (or similar) merchandise is not produced in the country of exportation. In this case, the involved merchandise was produced in England, and no similar merchandise was produced in Canada, so the cost of production in England is the first figure to be placed in the column of addition under section 1402(f).

Item two consists of "the usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise." The Court of Customs and Patent Appeals has stated that "the 'usual general expenses' of a business are the expenses of doing business. This would include in addition to the cost and manipulation of materials, all salaries, wages and commissions, traveling expenses, advertising, rents, taxes on buildings, stationery, stenographic, telephone and telegraph expenses, costs of delivery, depreciation on plant and equipment, and other actual outlays. These are the usual general expenses of business, and profit is calculated on the difference between such expenses and receipts." *United States* v. *Alfred Dunhill of London, Inc.*, 32 C.C.P.A. (Customs) 187, 189, C.A.D. 305. Since no merchandise similar to the involved merchandise was produced in Canada, the second figure in the column of addition must be the amount of the general expenses of doing business incurred by the producer in England.

We will pass over item three for a moment and discuss item four, since item four expressly refers to items one and two. Item four provides for a profit (not less than 8 per centum of the sum of the amounts found under items (1) and (2)) "equal to the profit which ordinarily is added, . . . *by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.*" [Italics added.] It is clear that the figure for item four in the column of addition must be found in the country of origin, England.

Item three in the column of addition consists of the cost of all containers and coverings and other costs incident to preparing the particular merchandise "for shipment to the United States." This figure would have to be found in the country of exportation, Canada.

A strict construction of section 1402(f) is required. When, as here, it is agreed that the valuation of the merchandise is based on cost of production "the pertinent items of the paragraph must be strictly followed in calculating such cost, and any reference to any other kind of value, such as substantive or constructive values, is irrelevant and

need not be discussed. . . . No values may be found except in the manner and by the means defined by the tariff act." *United States* v. *Alfred Dunhill of London, Inc., supra,* 189.

In the case of *H. J. Heinz Company* v. *United States, supra,* merchandise, which was manufactured in France but exported to the United States from England, had been appraised on the basis of a constructive cost of production in England. In rejecting such a basis of valuation, the court stated (p. 132) :

> It is not apparent from the record how the appraiser arrived at the value which he determined to be the constructive cost of production in England. It is to be noted that section 402(f), *supra,* recites that the cost of production shall be the sum of "(1) The cost of materials of, and of fabrication, manipulation, or other processes employed in manufacturing or producing such or similar merchandise * * * (2) The usual general expenses * * * in the case of such or similar merchandise * * * (4) An addition for profit * * * equal to the profit which is ordinarily added * * * by *manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.*" [Italics added.] Since it is undisputed in this case that there is no *production* of the imported (or similar) merchandise in England, the country of exportation, the *constructive* cost of production, as used in the present case, necessarily means the amount it would cost to produce the imported merchandise based on the hypothetical cost of materials, the hypothetical cost of fabrication, the hypothetical cost of manipulation, the hypothetical general expenses, and the hypothetical profits. We think it is far too speculative to be realistic to use a constructive cost of production based on the foregoing hypothetical factors, and we know of no prior decided case of our court which has affirmed such an appraisement. [Italics quoted.]

It is true in the case of *H. J. Heinz Company* v. *United States, supra,* the court found that there existed a foreign value of similar merchandise in England and that it was not necessary, therefore, to determine cost of production. However, it is manifest from its decision that, in its opinion, a constructive cost of production for the country of exportation when the imported (or similar) merchandise was not manufactured or produced therein would not be acceptable compliance with the statute.

The breakdown of the figures for items one through four is not stated in the stipulation of the parties. They have agreed, however, that, if cost of production is to be determined in the country of origin, in this case, all of the elements of section 1402(f) are included in the sum total figure of English pounds 356. See point four of the stipulation, which reads as follows:

> That the "cost of production" of said automobiles in England as ascertained by reference to manufacture in England and subsequent sale thereof, as referred to in Section 402(f) was English pounds 356 each.

The single judge was correct in his interpretation of item three in section 1402(f). He did not discuss item two. As has been stated

above, we are of the opinion that items one, two, and four should be found in the country of actual manufacture or production, where such or similar merchandise was not produced in the country of exportation, and we feel that it was error to build the cost of production around item three. We are of the opinion that cost of production should be built around items one, two, and four, supplemented by item three, where, as in this case, such or similar merchandise was not produced in the country of exportation.

When section 1402(f), as above construed, is applied to the stipulation of facts in this case, the presumption of correctness legally attaching to the appraiser's return of value is overcome and the proper dutiable value is established.

The single judge has done a careful job in establishing the cost of production in the country of exportation, Canada, on the basis of his interpretation of section 1402(f). However, we feel that our analysis of section 1402(f), as applied to the facts in this case, requires that the items of production specified in subdivisions (1), (2), and (4) of the statute be determined in the country of manufacture or production and be supplemented by the item specified in subdivision (3), which must be determined in the country of exportation.

We, therefore, find as facts:

1. That the merchandise here involved consists of four M.G. Midget "TD" Roadsters imported at Seattle, Wash., from Vancouver, British Columbia, Canada, the country of exportation.

2. That said automobiles were appraised at Canadian $1,282.27 each, net, representing a constructive cost of production in Canada.

3. That said automobiles were manufactured in England and thereafter sold and shipped to a Canadian firm, which firm thereafter sold them to a purchaser in the United States.

4. That such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of Canada, either for home consumption in Canada or for exportation to the United States.

5. That such or similar imported merchandise was not freely offered for sale to all purchasers in the principal markets of the United States.

6. That such or similar merchandise was not manufactured in Canada.

We conclude as matter of law:

1. That there is no statutory foreign, export, or United States value for such or similar merchandise under section 1402(c), (d), or (e) of 19 U.S.C. (§ 402 (c), (d), or (e), Tariff Act of 1930).

2. That the basis of valuation of such or similar merchandise is cost of production under section 1402(f) of 19 U.S.C. (§ 402(f), Tariff Act of 1930).

3. That said cost of production, under section 1402(f) of 19 U.S.C. (§ 402(f), Tariff Act of 1930), is English pounds 356 each.

The decision and judgment of the trial court are, therefore, reversed.

Judgment will be rendered accordingly.

DISSENTING OPINION

DONLON, Judge: I do not concur with the majority.

This litigation presents a single (and novel) question of law. The question is: Does section 402(f) of the Tariff Act of 1930, as effective on July 18, 1951, the date when the subject British automobiles were imported from Canada at the port of Seattle, require that cost-of-production value of these automobiles shall be determined by using statutory value components for the country of exportation, except as to subparagraph (4); or does section 402(f) require that their cost-of-production value shall be determined by using statutory value components for the country of manufacture, except as to the value components of subparagraph (3).

On the stipulated record before us, there is no foreign or export or United States value for these automobiles. There is no question of fact as to what the cost of production is, on either of the alternative bases involved in the law issue. If the court finds that Congress intended value to be based on cost-of-production components (except as to subparagraph (4)) for the country of exportation, the parties have stipulated that such value (in Canada, the country of exportation) is $1,282.27, Canadian currency, per automobile. If the court finds that Congress intended value to be based on cost-of-production components (except as to subparagraph (3)) for the country where the automobiles were manufactured, the parties have stipulated that such value (in England, the country of manufacture) is 356 British pounds per automobile.

As I read the majority opinion, their view is that Congress intended to provide, in section 402(f), that cost of production shall be determined by using statutory value components of the country of exportation (other than as to subparagraph (4), as to which Congress spelled out its intention to base the profit component on conditions in the country of manufacture), except "where, as in this case, such or similar merchandise was not produced in the country of exportation."

I see nothing to bear out such interpretation of congressional intention. Either section 402(f) calls for cost of production in the country of exportation, or it calls for cost of production in the country of manufacture. If Congress intended that section 402(f) should be applied, now one way and now another, dependent on whether such or similar merchandise was produced in the country of exportation, it would have been easy for Congress to say so. It did not say so. I

find nothing in the language which Congress used that suggests we should infer that Congress here intended alternative formulae, one of which is alien to accepted value concepts for tariff purposes.

It cannot be said that it is not possible to arrive at the statutory cost of production value of these automobiles in the country of exportation. The appraiser found such a value, and the parties have stipulated that this value is correct *if* cost of production in the country of exportation is the basis of valuation that Congress intended. On the record before us there is, therefore, no difficulty in finding such value, and some imagined difficulty the appraiser might have experienced (but so far as our record shows, did not) should not be the ground on which to impute to Congress an intention it did not express.

The rule of statutory construction is that weight is to be given to *all* the language which the legislature has used to express its intention. The usual basis for appraising merchandise imported into the United States is value in the country of exportation. Congress has so provided, in section 402(c) and (d). Even where, as in section 402(e), an alternative value basis is denominated "United States value," statutory allowances work back from an American selling price to a constructive value, not in the United States, but in the country of exportation.

Similarly, in section 402(f), Congress provided specifically as to the single value component which is to be derived from a country other than the country of exportation. This is subparagraph (4).

The majority appear to conclude that this special provision bespeaks a congressional intention to incorporate the language of subparagraph (4) into some, at least, of the other subparagraphs of section 402(f). I do not share their view. That the enumeration of a specific limitation, stated solely with respect to a particular provision, is not to be read as if it were a general limitation applying to other provisions, is a rule of construction so generally accepted as not to require the citation of precedents.

Foreign and export values *in the country of exportation* are the preferred statutory bases of valuation of dutiable merchandise. United States value and cost-of-production value are alternative bases, to be resorted to only when it is impossible to establish either a foreign value or an export value. Our appeals court has, on many occasions, referred to these alternative bases (United States value or cost-of-production value) as an attempt to approximate foreign value or export value. In *United States* v. *New York Merchandise Co., Inc.*, 31 C.C.P.A. (Customs) 213, C.A.D. 274, at pages 218, 219, our appeals court said:

. . . we think it not improper to say, and it has been elsewhere often said, that *in arriving at* United States value or *the cost of production under the act of 1930* or other acts similar in character, we must take into consideration the

fact that *Congress was trying*, by including certain items and excluding others, *to arrive at what might be comparable to a foreign value or an export value* if there had been one, and that Congress sought to apply as a settled tariff policy the foreign or export value whenever it was applicable, in preference to the United States value, which was obviously a less satisfactory basis for arriving at the final appraised value. [Emphasis supplied.]

While the valuation provisions of the Customs Simplification Act of 1956 clearly are not applicable to this litigation, it may not be amiss to observe that they evidence both a continuing congressional intention that constructive rather than "actual" or market values shall be used for tariff purposes and at least a present intention (without any indication that it is a changed intention) *that cost of production shall be cost in the country of exportation.*

The effectiveness of the Antidumping Act, as the trial judge pointed out, might be seriously impaired if goods imported from one country were to be valued, for duty purposes, on lower costs prevailing in some other country of manufacture. I see no reason to infer that Congress, which in the Antidumping Act used language defining cost-of-production value components substantially the same as the language of section 402(f), now before us for construction, intended a construction detrimental to the announced policy of the Antidumping Act. The report of the Committee on Finance to the Senate, on the Antidumping Act of 1921, which was H.R. 2435, said, with respect to the statutory definition of cost of production:

The purpose of this definition is to create *a constructive foreign-market value* based on the cost of material and labor at a time preceding the date of shipment of the imported merchandise which would ordinarily permit the manufacture or production of such merchandise in the usual course of business. It is not limited to the actual cost of the imported merchandise. [Emphasis supplied.]

Foreign value, mentioned by the finance committee, is a value *in the country of exportation.*

The majority find support for their views in certain *dicta* in *H. J. Heinz Company* v. *United States*, 43 C.C.P.A. (Customs) 128, C.A.D. 619. What the court there *held* was that there was a foreign value for similar merchandise in the country of exportation and that, where there is a foreign value for similar merchandise, such foreign value will prevail over a value based on cost of production. That decision is sound; but it has no application to the facts now before us.

This litigation points up the risk of accepting, at least in reappraisements, stipulations which purport to be only of fact, but which in reality blanket in some important conclusions of law. There are at least two or three such conclusions of law obvious in the stipulation before us.

For example, it is stipulated that no merchandise, such as or similar to these automobiles, is manufactured in Canada. Yet, it is also stipulated that the cost of production (of such or similar automobiles)

in Canada is $1,282.27 Canadian currency. Whether these automobiles are, in law, dissimilar to any other automobile, for value purposes, may be an issue in which there is law to be determined, as well as fact to be found.

Parties would do well to confine their stipulations to facts, leaving to the court the application of the law to the facts that are proven.

In my opinion, appellants here (plaintiffs below) have not overcome the presumption that the appraiser's value is correct.

The findings of fact, conclusions of law, and decision of the trial judge should be affirmed.